IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANTONIO L. GONZÁLEZ-ÁLVAREZ,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 23-1211 (MEL)

**OPINION AND ORDER**

I. **PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Mr. Antonio L. González-Álvarez's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 3. On May 26, 2020, Plaintiff filed an application for Social Security benefits, alleging that he initially became unable to work due to disability on June 29, 2016 (the "onset date"). Tr. 22. Prior to the onset date, Plaintiff's past relevant work was as a "hand packager." Tr. 33. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. Tr. 24. Plaintiff's disability claim was denied initially on September 18, 2020, and upon subsequent reconsideration on January 7, 2022. Tr. 22.

Thereafter, Plaintiff requested a hearing which was held on January 19, 2023, before an Administrative Law Judge (the "ALJ"). Tr. 22. On February 2, 2023, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 35. Plaintiff requested review of the ALJ's decision. Tr. 743–45. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1. Plaintiff

filed a complaint on May 2, 2023. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 15, 18.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ

cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C. The ALJ's Decision**

In the ALJ's decision dated February 2, 2023, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2021, the date last insured. Tr. 24, 35. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of June 29, 2016, through the date last insured. Tr. 24. At step two, the ALJ determined that Plaintiff had the following severe impairments: "thoracic and lumbar degeneration, osteoarthritis of the bilateral hands[,] and major depressive disorder." Tr. 24. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. Next, the ALJ determined that during the relevant period:

> [Plaintiff] ha[s] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: [Plaintiff] has the residual functional capacity to perform less than full range of light work except lifting 20lbs occasionally and 10lbs frequently; carrying 20lbs occasionally and 10lbs frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours and push/pull as much as [he] can lift/carry. He can handle items frequently with the left hand[] and can handle items frequently with the right hand. He has fingering limitations frequently with the left hand[] and has fingering limitations frequently with the right hand. [Plaintiff] can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel occasionally, crouch occasionally, [and] crawl occasionally. From the mental standpoint, [Plaintiff] is able to perform simple work-related decisions; is able to interact with supervisors: frequent; is able to interact with coworkers: frequent; is able to interact with the public: occasional; and as to dealing with changes in the work setting, he is limited to make simple work-related decisions. He is able to understand, remember and execute 1-2 step simple instructions, and is able to maintain attention and concentration for 2[-]hour intervals.

Tr. 27. At step four, the ALJ determined that during the relevant period, Plaintiff was not capable of performing his past relevant work as a "hand packager." Tr. 33. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a

vocational expert ("VE"). Tr. 33–34. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: laundry sorter, folder, bottle label inspector. Tr. 34. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 62.

### III.  LEGAL ANALYSIS

Plaintiff challenges the ALJ's RFC determination, contending that the ALJ erred at assessing Plaintiff's hand osteoarthritis and mental condition. The Commissioner responds, arguing that the ALJ's decision was supported by substantial evidence and that Plaintiff has failed to show error.

### A. Plaintiff has failed to show that the ALJ's assessment of her hand's osteoarthritis constitutes reversible error.

Plaintiff contends that the ALJ erred in assessing his hand's osteoarthritis because (1) the state agency consultants at the initial and reconsideration level did not consider Plaintiff's hand osteoarthritis, (2) the ALJ did not rely on a medical opinion in finding that Plaintiff had a hand limitation, and (3) the ALJ misrepresented that Plaintiff was riding a bicycle to a physician's appointment. ECF No. 15 at 29–34. When formulating a claimant's RFC, the ALJ must base his determination on all relevant evidence, including a plaintiff's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A plaintiff's RFC is the most she can do despite limitations from his impairments. *Id.* The claimant bears the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

First, Plaintiff takes issue with the state agency consultant's RFC assessments at the initial and reconsideration level because they considered a diagnosis for carpal tunnel, not hand

osteoarthritis. ECF No. 15 at 29. Internist Dr. Rafael Queipo and Mr. José González were the state agency consultants who evaluated Plaintiff's physical RFC at the initial and redetermination level, respectively. Tr. 517–18, 528–30. In making said assessments, both of the state agency consultants assessed Plaintiff for carpal tunnel but did not assess him for hand osteoarthritis. Tr. 518, 524. Ultimately, each concluded that Plaintiff did not have any hand or manipulative limitations. Tr. 518, 529. Notwithstanding, after making an independent examination of the record as a whole, the ALJ concluded that Plaintiff was limited to handling and fingering in both hands frequently. Tr. 27, 33.

  The court's review ultimately focuses on the final decision of the Commissioner, *i.e.*, the ALJ's conclusion that Plaintiff was not disabled for purposes of Social Security. 42. U.S.C. § 405(g). Therefore, it follows that a physician's findings or conclusions are subject to judicial review to the extent that they are relevant to the ALJ's final decision. Here, the ALJ did not rely on the state agency consultant's findings that Plaintiff did not have manipulative limitations. Indeed, after reviewing the entire record, the ALJ concluded that manipulative (i.e., handling and fingering) limitations were warranted in both hands. Thus, Plaintiff's challenge concerning the state agency consultant's failure to assess Plaintiff's hand osteoarthritis is of no consequence to the ALJ's determination that Plaintiff warranted further hand limitations. In other words, because the ALJ did not rely on the state agency consultant's RFC assessment regarding Plaintiff's hand limitations, Plaintiff has failed to show how the state agency's failure to asses his hand osteoarthiris affected the ALJ's decision and thus provides a basis for remand.

  Second, Plaintiff contends that the ALJ's RFC assessment concerning Plaintiff's limitation to handle and finger frequently was error because it was based on the interpretation of raw medical data, not on a medical opinion. ECF No. 15 at 30–31. An ALJ is not qualified to

7

interpret raw data in a medical record and generally requires an RFC from a physician to determine physical exertional capacity. *Perez v. Sec'y of Health & Hum. Servs.*, 958 F.2d 445, 446 (1st Cir. 1991). However, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996). As mentioned above, despite the medical opinions from the state agency consultant's finding that Plaintiff had no manipulative limitations, the ALJ assessed that Plaintiff was limited in handling and fingering frequently. Plaintiff posits that the ALJ's failure to rely on a medical opinion to assess Plaintiff's hand limitations makes it unclear whether those limitations should be occasional as opposed to frequent, which is what the ALJ ultimately determined. ECF No. 15 at 31.

Aside from the findings of the state agency consultants, the ALJ's decision discussed other medical evidence regarding Plaintiff's hands. For example, the ALJ noted that examining Internist Dr. Agustin López Covas ("Dr. López") evaluated Plaintiff in August 2020 and found, in relevant part, that Plaintiff had full strength in his hands and was negative for pain, tenderness, swelling, atrophy, tremors, and sensory changes. Tr. 32 (citing Tr. 1039). Moreover, Dr. López reported that Plaintiff was not limited in either hand in his ability to grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write. Tr. 32 (citing Tr. 1039). While the ALJ did not explicitly label Dr. López's evaluation as a medical opinion, the same reasonably details Plaintiff's lack of functional limitations in his hands in a manner that "would be apparent even to a lay person." *Manso-Pizarro*, 76 F.3d at 17. Therefore, regardless of whether Dr. López's evaluation qualifies as a medical opinion, it reasonably supports the ALJ's hand limitation that

8

Plaintiff was limited to frequent handling and fingering instead of occasional handling and fingering.

Third, Plaintiff takes issue with the following statement in the ALJ's decision: "[Plaintiff] admitted to riding a bicycle to see his doctor, but claimed that he rode with his nephew." Tr. 28. Plaintiff asserts that this statement is false because during the hearing before the ALJ, Plaintiff denied riding a bicycle. ECF No. 15 at 33. Here, a progress note from a physician in October 2022 states that Plaintiff "attended [appointment] by bicycle." Tr. 474. When the ALJ brought this statement to Plaintiff's attention during the hearing, Plaintiff replied, "No, that was my nephew who was with me." Tr. 53.

Despite Plaintiff's denial, there is no reason to disturb the ALJ's factual finding. On one hand, Plaintiff explicitly denied riding a bicycle to his appointment. On the other hand, however, the progress note unambiguously suggests that Plaintiff was riding a bicycle. Moreover, a medical report dated June 2020 states that Plaintiff "mentions being a cyclist and exercising regularly." Tr. 138. Thus, it was not unreasonable for the ALJ to resolve this factual dispute against Plaintiff.

Even if, for the sake of argument, this was error, Plaintiff has failed to show how the ALJ's statement regarding the bicycling is outcome determinative. *Pérez Torres v. Sec'y of Health and Human Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989)) ("Accordingly, if the likely outcome on remand in this case is clear and the same as that reached in the decision under review, making the administrative law judge's admitted error essentially harmless, the court may uphold the denial of the plaintiff's claim."). The statement itself is limited to one sentence and is nothing more than a recitation of Plaintiff's testimony, not necessarily a factual finding that Plaintiff indeed was riding a bicycle. Nothing reasonably suggests that this conclusion was

material in determining Plaintiff's hand limitations. Accordingly, Plaintiff has failed to show prejudicial error in the assessment of his hand osteoarthritis.

**B. Plaintiff has failed to show that the ALJ erred in assessing Plaintiff's mental condition.**

Plaintiff asserts that the ALJ failed to consider the medical opinions of treating psychiatrist Dr. Ángel Loyola Pérez ("Dr. Loyola") in formulating Plaintiff's mental RFC. ECF No. 15 at 34–35. Specifically, Plaintiff claims that the ALJ erred by failing to assess the medical opinions in Dr. Loyola's December 2021 and January 2023 psychiatric reports.[1] ECF No. 15 at 35. Said conclusions, according to Plaintiff, are medical opinions, and thus the ALJ's failure to discuss them in the decision amounts to reversible legal error. This assertion is untenable since Plaintiff fails to point to any conclusion in Dr. Loyola's report that qualifies as a medical opinion.

According to 20 C.F.R. § 404.1513(a)(2), for a physician's conclusions to be considered a medical opinion, two things must be shown:

> A medical opinion is a statement from a medical source [(1)] about what you can still do despite your impairment(s) *and* [(2)] whether you have one or more impairment-related limitations or restrictions in the following abilities:
> . . . .
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

---

[1] Plaintiff's memorandum of law emphasizes Dr. Loyola's *July 2020* and December 2021 reports, but he does not explicitly mention the January 2023 report. ECF No. 15 at 35. However, when Plaintiff cites to the record, he is citing only to the December 2021 and January 2023 reports. Because Plaintiff fails to cite to any finding or conclusion in Dr. Loyola's July 2020 report, any challenge to the July 2020 report is deemed waived. *Redondo–Borges v. Dept. of Housing and Urban Development*, 421 F.3d 1, 6 (1st Cir. 2005) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Regardless, the ALJ explicitly considered the July 2020 report in the decision. Tr. 30. ("According to psychiatric medical reports dated *July 2020* and December 2021 from Dr. [Á]ngel Loyola P[é]rez, . . ." (emphasis added)).

10

20 C.F.R. § 404.1513(a)(2) (emphasis added). Regarding the December 2021 report, Plaintiff cites Dr. Loyola's conclusion stating that Plaintiff's "level of tolerance when faced with stressful situations is poor." Tr. 305–306. While this statement describes a limitation related to Plaintiff's ability to deal with pressure in the workplace, it fails to shed any light on what, if anything, Plaintiff can still do despite this limitation. Similarly, Plaintiff points to Dr. Loyola's conclusion where he states that he "does not expect any significant short-term improvement" regarding Plaintiff's ability to persist with task.[2] Again, this fails to elaborate on what Plaintiff can do despite his limitations in persisting with tasks. Therefore, these statements are not a medical opinion as defined in 20 C.F.R. § 404.1513(a)(2).

The conclusions emphasized in Dr. Loyola's January 2023 psychiatric report warrant the same result. In said report, Plaintiff highlights the following statements:

> II. History of Illness:
>       . . . .
> [I]n spite of treatment received, [Plaintiff] has not shown significant improvement or . . . sustained in his emotional condition, but rather on the other hand, [Plaintiff] has shown a significant tendency towards the chronic nature of his condition that severely affects his psychosocial performance.
>       . . . .
> B. Attention and Concentration:
> [Plaintiff] has shown progressive and sustained deterioration of his cognitive skills since the onset of his condition. [Plaintiff] is easily distracted, having to repeat questions several times.

Tr. 423–24, 26. The conclusions above do not illustrate what Plaintiff can still do in the workplace despite the limitations described. Consequently, they cannot be considered medical opinions. *Cf. García Torres v. Comm'r of Soc. Sec.*, No. CV 22-1481, 2024 WL 1886455, at *5 (D.P.R. Apr. 30, 2024) ("These statements in and of themselves provide barely any guidance as

---

[2] Further in this section, Dr. Loyola declared that Plaintiff "does not have the necessary skills to comply with the requirements that any wage-earning job demands." The ALJ rightfully disregarded this statement because the "determination [of] whether a claimant is unable to work is reserved for the Commissioner." *Pérez-Serrano v. Comm'r of Soc. Sec.*, No. CV 19-1499, 2021 WL 2031979, at *9 (D.P.R. May 21, 2021).

to what Plaintiff can still do in the workplace and offer little insight, if any, into Plaintiff's functional limitations."). Moreover, the only conclusion in the January 2023 psychiatric report that does relate to Plaintiff's ability to work explains that Plaintiff "cannot comply with the minimum requirements that any wage-paying job demands" and that Dr. Loyola "believe[s] that [Plaintiff] is completely and permanently disabled from the social and work point of view." Tr. 428. This conclusion, however, need not be considered because the final conclusion as to whether a claimant is able to work is reserved solely for the Commissioner, not a physician.

Consequently, the conclusions that Plaintiff cites to amount to "other medical evidence" under 20 C.F.R. 404.1513(a)(3). *Cf. García Torres*, 2024 WL 1886455, at *6 ("Although the ALJ's decision suggests that Dr. Rosado 'provided an "opinion" in the colloquial sense, in the context of these disability benefits proceedings, his [psychiatric] report is' better characterized as 'other medical evidence' under 20 C.F.R. 404.1513(a)(3).") "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including *judgments about the nature and severity of your impairments*, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3) (emphasis added). "Furthermore, unlike a medical opinion, the regulations place no requirement to articulate how persuasive the ALJ found Dr. [Loyola's conclusions] because [they] constituted other medical evidence." *García Torres*, 2024 WL 1886455, at *6. Therefore, contrary to Plaintiff's claims, the ALJ was not required to assess Dr. Loyola's statements as medical opinions. Even so, the ALJ's decision considered Dr. Loyola's reports from 2021–2022, including the December 2021 report that Plaintiff explicitly challenges. Tr. 29; *e.g.*, Tr. 430. While the ALJ's written decision does not explicitly discuss the January 2023 report, said report is merely cumulative of Dr. Loyola's findings and conclusions from his earlier reports spanning

12

over two years, and thus the January 2023 was not required to be explicitly discussed. *Gonzalez v. Saul*, No. CV 19-01427-FDS, 2021 WL 5749840, *at 11 n.11 (D.P.R. Dec. 1, 2021) ("[T]he ALJ's decision need not address pieces of evidence that are cumulative of evidence already discussed.").[3] Finally, Plaintiff fails to elaborate how the limitations he highlights in Dr. Loyola's reports are not reasonably accounted for in the ALJ's RFC where the ALJ limited Plaintiff to making simple work-related decisions. Tr. 27. Accordingly, Plaintiff has failed to show error that justifies remand.

### IV. CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits contains no prejudicial legal error. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of September, 2024.

s/Marcos E. López  
U.S. Magistrate Judge

---

[3] For example, the January 2023 report asserts that Plaintiff was completely disabled and had diminished attention and concentration. Tr. 426–27. Both of these assertions were similarly addressed in the ALJ's decision based on findings and conclusions from Dr. Loyola's earlier reports. Tr. 29.